# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANTOINETTE M. SCHULTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-148-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Antoinette Schultz requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born January 3, 1969, and was forty-five years old at the time of the administrative hearing (Tr. 45). She completed the eleventh grade, and has no past relevant work (Tr. 35, 162). The claimant alleges she has been unable to work since November 30, 2011, due to rheumatoid arthritis, asthma, hepatitis C, depression, and bi-polar disorder (Tr. 161).

**Procedural History**

On October 31, 2012, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 22, 2014 (Tr. 26-36). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, sit and stand/walk for six hours each in an eight-hour workday. The ALJ imposed the further limitations of no more than frequently kneeling, crouching, or

crawling; avoiding work above the shoulder level; and avoiding concentrated exposure to dust, gases, fumes, or poor ventilation (Tr. 31). The ALJ concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *i. e.*, the representative occupations of courier and cafeteria attendant (Tr. 36).

**Review**

The claimant contends that the ALJ erred by: (i) failing to perform a proper evaluation at steps four and five, (ii) failing to properly evaluate the source evidence, and (iii) failing to conduct a proper credibility determination. As to the first two arguments, the claimant specifically contends that the ALJ erred by wholly failing to account for her mental impairments, and the Court agrees. Accordingly, the decision of the Commissioner is therefore reversed.

At step two, the ALJ determined that the claimant had the severe impairments of osteoarthritis, asthma, and obesity, as well as the nonsevere impairments of depression and anxiety (Tr. 28). The evidence in the record related to the claimant's mental impairments indicates that she largely received treatment through the Cherokee Nation Health Services (Tr. 230-342), and her diagnoses included asthma, lipid disorder, hepatitis C, substance abuse, seasonal allergies, anxiety, depression, panic attacks, dyslipidemia, and GERD (Tr. 232). Positive depression screening and notes reflecting the claimant's reported anxiety go back at least as far as 2010 (Tr. 293, 317, 324). Notes from February 6, 2012 indicate that the claimant reported worsening depression, but was considered non-compliant because she had thrown her medications away (Tr. 264).

On January 24, 2013, the claimant was seen by Dr. James McKay as a new patient, complaining of continued joint pain and swelling, and the claimant was positive for depression (Tr. 344-345).

The claimant received mental health treatment at the Wilma P. Mankiller Health Center and Creek Nation Behavioral Health Services. She underwent at least some cognitive behavioral therapy in 2013 (Tr. 441). Between December 2013 and May 2014, the claimant missed several appointments, then had difficulty getting an appointment because she had missed previous ones (Tr. 429). On June 2, 2014, the claimant was treated for severe depression with suicidal thoughts, auditory hallucinations, and chronic low back pain, after reporting hearing voices telling her to hurt herself (Tr. 405-406, 427). Notes from Creek Nation Behavioral Health Services indicate that the claimant reported medications helping her, but that she was crying a lot by midafternoon (Tr. 422). Her diagnoses included major depressive disorder, moderate with psychotic features (at times), and generalized anxiety disorder (Tr. 423, 441).

A state reviewing physician determined that the claimant had one or more severe affective disorders, but that she had mild restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace (Tr. 75). This was affirmed upon review in September 2013, almost a year prior to the bulk of the mental health evidence in the record (Tr. 89). There are no consultative examinations regarding the claimant's mental health status in the record.

In his written opinion, the ALJ determined the claimant's severe and nonsevere impairments at step two. At step two, the ALJ also summarized the records related to the claimant's mental health treatments, and determined that the claimant had mild limitations in the three areas of functional limitation, with no episodes of decompensation of extended duration (Tr. 28-30). At step four, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in the record, including several of the records noting the claimant's depression (Tr. 32-32). He also inaccurately noted that the state reviewing physicians had found the claimant's mental impairments nonsevere, then afforded "greater weight" to the reconsideration opinions because they had "a more complete record" (Tr. 34).

Here, the claimant alleges error with regard to the nonsevere mental impairments. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v.*

*Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because although the ALJ mentioned each impairment at step two, the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments," at step four. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Importantly, the ALJ here provided no discussion of evidence to instruct this Court how the assigned RFC, which includes *no* psychologically-based limitations, actually accounts for the claimant's documented impairments including depression and anxiety. In fact, it appears the ALJ mis-read the state reviewing physician opinions as finding the claimant's mental impairments to be nonsevere. The Court nevertheless acknowledges that the record in this case is sparse with regard to evaluations of the claimant's mental impairments, as well as the ALJ's broad latitude in deciding whether to order consultative examinations. The ALJ, however, was not entitled to discount the mental health evidence at step two

and then refuse to make findings at step four regarding the individual and cumulative effect of these impairments. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). The ALJ should thus *consider* recontacting the claimant's treating physicians, requesting further medical records, and/or ordering a consultative examination to properly account for the claimant's mental impairments. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record, but an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record. *See Hawkins*, 113 F.3d at 1166, 1168. The ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he failed to further develop the record.

Finally, the Court notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has

provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). In light of the ALJ's use of boilerplate language in evaluating credibility in the first instance in this case, the undersigned Magistrate finds that remand for proper analysis under the new guidance would likewise be advisable here.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**